**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: CHAD HARLEY MORGAN,
                    *Petitioner,*

CHAD HARLEY MORGAN,
                    *Petitioner,*

                    v.

UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
ARIZONA,
                    *Respondent,*

UNITED STATES OF AMERICA,
            *Real Party in Interest.*

No. 07-70201

D.C. No.
CR-06-00238-PCT-
FJM

OPINION

Petition for Writ of Mandamus

Argued and Submitted
April 20, 2007—San Francisco, California

Filed October 9, 2007

Before: Alfred T. Goodwin, Sidney R. Thomas, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Goodwin

13607

## COUNSEL

Craig Orent, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-petitioner.

Linda C. Boone, Assistant United States Attorney, Phoenix, Arizona, for the United States of America, real party in interest.

**OPINION**

GOODWIN, Circuit Judge:

Chad Harley Morgan ("Morgan") petitions this court for a writ of mandamus after the district court rejected the stipulated sentence called for by Morgan's plea agreement with the government. The government does not oppose the petition, and both parties assign error to the district court's conclusion that the stipulated sentence was "unreasonable as a matter of law." We deny Morgan's petition. However, because we conclude that the district court erred, we remand this matter for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

While imprisoned at a detention center on the Hopi Indian Reservation in Arizona, Morgan and fellow inmate Derrick Mase ("Mase") attacked another man without provocation. Morgan placed the victim in a choke hold, and after Mase punched the victim in the face several times, Morgan threw him to the ground, head first. The victim sustained serious head injuries, leading to approximately one month of hospitalization during which he required a feeding tube, sedation, and intubation. Morgan and Mase were both indicted in the District of Arizona and charged with one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). Both men pleaded guilty to the charged offense under plea agreements with stipulated terms of imprisonment, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C): thirty-seven months for Morgan, thirty-three months for Mase.

In November 2006, Mase proceeded to sentencing. Noting the stipulated prison term in the agreement, the district court initially stated: "Ordinarily we would summarily reject plea agreements like this because they don't leave us anything to do. But in this case it's a plea to what looks like it turns out

to be the high end of the advisory guideline." The court later reiterated its general aversion to stipulated sentences, stating: "I usually don't take pleas to specific terms because it doesn't leave me anything to do, but I do consider them. And in this case it may be a perfectly acceptable plea because it's at the high end of the range." After both the government and Mase's counsel addressed the plea's propriety, the court undertook its own analysis. The court noted first that the sentence was within the advisory guideline range and explained that a sentence at the high end of the range was justified in light of the severity of Roy's injuries, as well as Mase's substantial juvenile and adult criminal record. The court stated that it had considered all of the factors required by 18 U.S.C. § 3553. Having considered the specific facts of Mase's case through the statutorily required lens, the court "satisfied [it]self" that the stipulated term was reasonable.

Morgan was sentenced three weeks later. At the outset of the sentencing hearing, the court noted that the thirty-seven month term to which the parties stipulated was the maximum sentence under the applicable guideline range but indicated that an upward departure may be appropriate, given the extent of Roy's injuries and Morgan's role in causing them. Morgan's attorney argued in favor of the stipulated sentence, and the court also heard from the probation officer, who stated that the stipulated sentence "might serve as a deterrent factor" and that he believed the sentence "will have some impact on" Morgan. The court nonetheless rejected the stipulated sentence, explaining that, in its opinion, "unless it's a slam-dunk case of reasonableness, it seems to me that a plea agreement in which the parties have stipulated to a particular number of months is unwise as a matter of policy, because it leaves no judging to the judge." Reasoning that acceptance of stipulated sentences as a general matter renders a district court's entry of judgment a mere formality, the court concluded: "I don't think that's what Article III federal court should be reduced to. So for that reason, we're going to reject the Rule 11(c)(1)(C) stipulated term in this agreement as being unrea-

sonable as a matter of law, not necessarily unreasonable as a matter of fact."

The district court then explained to Morgan his options, stating that the rejection of the stipulated term entitled Morgan to withdraw from the plea agreement and go to trial or to maintain his plea and go forward with sentencing, "with the possibility that the sentence might be more onerous to you than the cap in your plea agreement."

In a short minute order filed the same day, the district court "reject[ed] the Rule 11(c)(1)(C) stipulated term in the plea agreement as being unreasonable as a matter of law" and granted Morgan's motion for a thirty-day continuance until January 18, 2007. After the district court denied Morgan's subsequent request to continue the sentencing hearing another sixty days, Morgan filed in this court an emergency request to stay the sentencing hearing (which was granted) and the instant mandamus petition.

## II.  DISCUSSION

We have noted in various contexts the broad discretion that district courts enjoy when choosing to accept or reject plea agreements. *See Vasquez-Ramirez v. United States Dist. Court*, 443 F.3d 692, 699 (9th Cir. 2006); *United States v. Miller*, 722 F.2d 562, 563-64 (9th Cir. 1983). Following the lead of numerous other circuits, we take this opportunity to emphasize that this court reviews for an abuse of discretion a district court's decision to reject a plea agreement. *See, e.g.*, *United States v. Smith*, 417 F.3d 483, 486-87 (5th Cir. 2005).

### A.  Rule 11

[1] Federal Rule of Criminal Procedure 11 is the starting point when addressing whether, and under what circumstances, a district court may reject a plea agreement entered into between the government and a defendant. Where, as here,

a defendant pleads guilty to a charged offense, Rule 11(c)(1)(C) allows the parties to agree that "a specific sentence or sentencing range is the appropriate disposition of the case." When the parties reach this type of sentencing agreement, "the court may accept the agreement, reject it, or defer" its decision pending review of a presentence report. Fed. R. Crim. P. 11(c)(3)(A). But while the court is free to accept or reject a plea agreement, it may not do so on a piecemeal basis, and a Rule 11(c)(1)(C) stipulated sentence "binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). If the court accepts a plea agreement containing a Rule 11(c)(1)(C) stipulation, it must notify the defendant that "the agreed disposition will be included in the judgment." Fed. R. Crim. P. 11(c)(4). Conversely, if the court rejects such a plea agreement, it must (1) inform the parties, (2) advise the defendant that the court is not bound by the plea agreement and give the defendant an opportunity to withdraw the guilty plea, and (3) advise the defendant that if the plea is not withdrawn, "the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5).

## B. Categorical rejection of Rule 11(c)(1)(C) stipulations is improper

In both its oral decision and minute order, the district court rejected only "the Rule 11(c)(1)(C) stipulated term in the agreement," rather than rejecting the plea agreement *en toto*. However, as relevant to this petition, Rule 11 does not distinguish between "sentence bargains," such as the one at issue in this case, and so-called "charge bargains," in which a criminal defendant typically pleads guilty to a specific charge in exchange for the prosecution agreeing to drop other charges. Instead, Rule 11 refers to the singular "plea agreement," language this court has consistently read to mean that rejection of a stipulated sentence constitutes rejection of the entire plea agreement, thereby triggering the mechanisms in current Rule 11(c)(5). *See, e.g., United States v. Reyes*, 313 F.3d 1152,

1157 (9th Cir. 2002) (holding, where district court stated that it accepted a plea agreement " 'as in every detail and part' " but imposed a longer sentence than contemplated by the plea agreement, that "the district court did not 'accept' the plea agreement," but rather "rejected the plea and substituted its own view of the appropriate sentence under the guidelines"); *United States v. Mukai*, 26 F.3d 953, 955 (9th Cir. 1994) ("The rules contain no provision for the district court to modify a [former] Rule 11(e)(1)(C) plea agreement . . . ."); *United States v. Fernandez*, 960 F.2d 771, 773 (9th Cir. 1991) (per curiam) (holding that the district court "could not both accept the plea agreement made pursuant to [former] Rule 11(e)(1)(C), which calls for a specific sentence, and reject the sentencing provision of that agreement").[1]

**[2]** Rule 11 clearly vests district courts with the discretion to accept or reject plea agreements, including those that contain a stipulated sentence term. Fed. R. Crim. P. 11(c)(3)(A). The rule also specifies procedures the district court must follow once it accepts or rejects a plea agreement. Fed. R. Crim. P. 11(c)(4), (c)(5). However, nowhere does Rule 11 define the criteria by which a district court should exercise the discretion the rule confers, or explain *how* a district court should determine whether to accept a plea agreement.[2] Although the rule

---

[1]The stipulated sentences in *Reyes*, *Mukai*, and *Fernandez* were governed by former Rule 11(e)(1)(C), which contained the provisions found in current Rule 11(c)(1)(C), the operative rule in this case. *Compare Mukai*, 26 F.3d at 955, *with Ellis v. United States Dist. Court*, 356 F.3d 1198, 1207 n.12 (9th Cir. 2004) (en banc); *see also Ellis*, 356 F.3d at 1200 & n.3. The current version of Rule 11 became effective on December 1, 2002, as part of a general restyling of the Federal Rules of Criminal Procedure "to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 11 advisory committee notes.

[2]This conspicuous omission also appears to be intentional, as the drafters stated that the decision to accept or reject a plea agreement should be "left to the discretion of the individual trial judge," rather than governed by any bright-line test. Fed. R. Crim. P. 11, advisory committee notes.

on its face offers no guidance on this point, our case law clearly establishes that the broad discretion granted by Rule 11 is not unbounded. And, while we have not previously considered the precise issue presented by this petition — whether a district court may reject a plea agreement on the ground that it is "unreasonable as a matter of law" — our cases provide the necessary guidance to resolve this question.

In *United States v. Miller*, 722 F.2d 562 (9th Cir. 1983), the defendant initially pleaded not guilty to three counts of armed bank robbery before pleading guilty to one count in exchange for dismissal of the remaining two. 722 F.2d at 563. The plea agreement did not stipulate a specific sentence or require the government to recommend a particular sentence. *Id.* Announcing "a general policy not to accept single count pleas to multiple count indictments," the district court rejected the plea agreement with no further discussion. *Id.* Grounding our holding on three bases, and distinguishing between "charge bargains" in which the prosecution agrees to drop certain counts and "sentence bargains" in which the prosecution either recommends or stipulates to a specific sentence, *id.*, we held that "such categorical rules to govern charge bargaining are impermissible," *id.* at 565. First, and critically, we explained that such rules are antithetical to the general proposition that "the existence of discretion requires its exercise." *Id.* Because Rule 11 allows district courts to assess the wisdom of plea bargains, this power must be exercised reasonably, and "[w]hen a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised." *Id.* Second, we noted that separation of power principles require the judiciary and executive to remain independent. *Id.* Because deciding which charges to bring is a matter of prosecutorial discretion and because categorical limitations on charge bargains "may force prosecutors to bring charges they ordinarily would not, or to maintain charges they would ordinarily dismiss," such limitations impermissibly intrude upon the executive's exclusive domain. *Id.* Third, the Federal Rules require courts to respect prosecu-

torial charging decisions by granting leave to dismiss charges unless the dismissal is "clearly contrary to manifest public interest." *Id.* at 565-66 (internal quotation marks and citations omitted). Guided by these three considerations, and by a need to ensure that "judicial discretion is exercised with due regard for prosecutorial independence," we held that district courts "must review individually every charge bargain placed before them." *Id.* at 566.

By its terms the *Miller* prohibition of categorical rules does not necessarily apply to a district court's consideration of sentence bargains. *Id.* at 564 ("The proper judicial role in the sentence bargaining process is not raised by this case."). This should not surprise. Because there was no sentence bargain implicated in *Miller*, there was no reason for this court to consider whether the standard applicable to a district court's consideration of a charge bargain should apply in the sentence bargaining context, particularly in light of the different interests implicated by the two types of plea agreements. As we explained in *Miller*, a prosecutor plays a strictly advisory role in sentencing decisions but retains "almost absolute" discretion in charging decisions. *Id.* "Thus, sentence bargains raise the possibility of improper prosecutorial influence over sentencing while charge bargains raise the possibility of improper judicial influence over charging." *Id.*

While *Miller* left open the question of whether a district court may adopt categorical rules to reject sentence bargains, an en banc panel of this court recently held that a district court acts within its discretion when it rejects a sentence bargain after an individualized analysis of the specific circumstances presented. In *Ellis v. United States District Court*, 356 F.3d 1198 (9th Cir. 2004) (en banc), the district court accepted the defendant's guilty plea to second degree murder and deferred acceptance of the plea agreement. 356 F.3d at 1204. The agreement stipulated a 132-month term of imprisonment, but after reading the sentencing memoranda and hearing argument, the district court rejected the agreement, concluding

that in light of the defendant's prior record and the circumstances of the charged offense the contemplated sentence would not serve justice. *Id.* at 1201-02. The en banc court considered at length whether the district court had thereafter improperly refused to let the defendant either withdraw or stand by his guilty plea. But the court also emphasized both the broad discretion Rule 11 confers on district courts, as well as the requirement that a district court's discretion not be exercised in a vacuum, detached from the particular facts and circumstances of the case before it. Because the district court rejected the plea agreement due to its concerns that the stipulated sentence would not serve justice on the facts of the case before it, we concluded that "[t]he district court here was free to, and in fact did, reject the proposed plea agreement because it did not believe the guidelines sentence supported by the negotiated charge was adequate to serve the public interest." *Id.* at 1209. Further underscoring the necessity that a district court make an individualized assessment of a stipulated sentence's propriety in light of the specific facts and circumstances presented, we explained:

> The district court viewed the sentence resulting from [the defendant's] plea bargain as not in the best interest of society, *given [his] criminal history and the circumstances of the offense charged.* This was a judgment properly within the judicial function. It is also a function protected by Rule 11's provision for the rejection of a negotiated plea agreement when the court believes a sentence is too lenient or otherwise not in the public interest.

*Id.* (citation omitted) (emphasis added).[3]

---

[3]This analysis is in harmony with the approach taken by other circuits, which have uniformly upheld rejection of both charge and sentence bargain plea agreements when a district court undertakes an individualized analysis of the specific facts presented by the case before it. *See, e.g.*, *United States v. Smith*, 417 F.3d 483, 486-87 (5th Cir. 2005); *United States v. Gamboa*, 166 F.3d 1327, 1330-31(11th Cir. 1999); *United States v. Greener*, 979 F.2d 517, 519-20 (7th Cir. 1992); *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985).

**[3]** This petition therefore presents a question not directly answered by either *Miller* or *Ellis*: Whether, when considering a sentence-bargain plea agreement, a district court must provide individualized reasons for rejecting the agreement, based on the specific facts and circumstances presented. The answer to that question is yes.

**[4]** We are mindful of the distinctions *Miller* drew between charge and sentence bargaining and the differing separation of powers concerns attached to each type of plea agreement. However, we are not persuaded that those differences require, or authorize, the categorical rejection of a sentence bargain independent of any consideration of the specific circumstances giving rise to the bargain. Although the Supreme Court does not appear to have directly addressed the issue of rejecting plea agreements, the Court has held that a district court may reject a guilty plea itself "in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). *But see Vasquez-Ramirez v. United States Dist. Court*, 443 F.3d 692, 700 n.9 (9th Cir. 2006) (explaining that *Santobello* may be limited by later amendments to Rule 11 not at issue here). As we stated in *Miller*, "the existence of discretion requires its exercise," and "[w]hen a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised." 722 F.2d at 565. On the other hand, a district court properly exercises its discretion when it rejects a plea agreement calling for a sentence the court believes "is too lenient or otherwise not in the public interest" in light of the factual circumstances specific to the case. *Ellis*, 356 F.3d at 1209.

**[5]** Rule 11 vests district courts with considerable discretion to assess the wisdom of plea bargains, to which attaches a concomitant responsibility to exercise that discretion reasonably. We accordingly hold that district courts must consider individually every sentence bargain presented to them and must set forth, on the record, the court's reasons in light of the specific circumstances of the case for rejecting the bar-

gain. The district court here did not engage in this analysis, ruling instead that the sentence contemplated by Morgan's plea agreement was "unreasonable as a matter of law, not necessarily as a matter of fact." This type of categorical rejection of sentence bargain plea agreements is error, and we remand to the district court to make an individualized assessment of the propriety of Morgan's stipulated sentence, in light of the factual circumstances specific to this case.

## C.  Mandamus

Authorized by 28 U.S.C. § 1651(a), mandamus is "an extraordinary remedy that may be obtained only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 998 (9th Cir. 2003) (internal quotation marks and citations omitted). Before mandamus relief may be granted, this court "must be firmly convinced that the district court has erred, and that the petitioner's right to the writ is clear and indisputable." *Valenzuela-Gonzalez v. United States Dist. Court*, 915 F.2d 1276, 1279 (9th Cir. 1990) (internal quotation marks and citations omitted).

Although we decide *de novo* whether the writ should issue, *id.*, we review the district court's underlying orders for clear error, *Cordoza*, 320 F.3d at 998. We have adopted five guidelines, first articulated in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977), to determine whether the writ should issue: whether (1) Morgan has no other adequate means, such as a direct appeal, to attain the desired relief; (2) he will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or an issue of law of first impression. *Cordoza*, 320 F.3d at 998 (citations omitted).

The first two factors weigh against Morgan. He has not shown a legally cognizable harm that could not be remedied on appeal. He has no absolute right to have his plea agreement accepted. *North Carolina v. Alford*, 400 U.S. 25, 38 (1970). Nor does he possess a constitutional or statutory right to a specific sentence, only to a "reasonable" one. *United States v. Booker*, 543 U.S. 220, 264 (2005). Additionally, because the district court has rejected his plea agreement, it must also give Morgan an opportunity to withdraw his guilty plea. Fed. R. Crim. P. 11(c)(5)(B). Moreover, because the plea agreement has been rejected, if Morgan persists in his guilty plea it will be a "naked plea, unencumbered by waivers of his right to appeal or collaterally challenge the proceedings." *Vasquez-Ramirez v. United States Dist. Court*, 443 F.3d 692, 697 (9th Cir. 2006). Therefore, any legally cognizable harm can be remedied on direct or collateral review of whatever sentence the district court ultimately imposes.

**[6]** The third factor helps Morgan little more. Although the district court erred by categorically rejecting Morgan's plea agreement as a matter of law, we do not consider this ruling "clear error." Because no prior Ninth Circuit authority prohibited the course taken by the district court, its ruling is not clearly erroneous. The fourth factor also weighs against Morgan. Although the district court indicated its general aversion to stipulated sentences, there is nothing in the record before us that indicates an "oft-repeated" practice of rejecting stipulated sentences "as being unreasonable as a matter of law, not necessarily unreasonable as a matter of fact." Indeed, the district court accepted the stipulated sentence in Mase's plea agreement. Finally, the fifth factor is of no help. While this case presents a question of first impression in the Ninth Circuit, this fact alone does not justify the "extraordinary remedy" of mandamus.

**[7]** Accordingly, we deny Morgan's petition, vacate the stay of his sentencing hearing, and remand to the district court

for further proceedings.

**VACATED AND REMANDED.**